# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NORTHEAST DIVISION

| | |
|---|---|
| PRECISION PUMP & GEAR, INC., | )<br>) |
| Plaintiff, | )<br>) |
| | ) CASE NO. _____ |
| vs. | )<br>) |
| DACCO, INCORPORATED. | ) JURY DEMAND |
| | ) |
| Defendant. | ) |

## COMPLAINT

Precision Pump & Gear, Inc., a Tennessee corporation ("Precision"), brings this action and files this Complaint against Dacco, Incorporated, an Ohio corporation ("Dacco"), and for its causes of action against Dacco, Precision states as follows:

### Parties

1. Precision is a Tennessee corporation no longer engaged in business. When Precision was engaged in business, its principal place of business was located in Cookeville, Putnam County, Tennessee.

2. Dacco is a corporation organized and existing under the laws of the State of Ohio, having its principal place of business within the State of Ohio.

### Jurisdiction and Venue

3. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(a), in that Precision and Dacco are citizens of different states, and the amount in controversy, exclusive of interest and costs, exceeds $75,000.00.

1

4. Dacco has procured a Certificate of Authority to transact business within Tennessee as a foreign corporation, and has appointed an agent for service of process in Tennessee. Dacco owns substantial property in Tennessee and conducts substantial business within Tennessee. The causes of action asserted herein arise out of a contract made by Dacco in Tennessee, with a Tennessee corporation, which contract was expected to be performed within Tennessee, in whole or in part. For at least the foregoing reasons, this Court has *in personam* jurisdiction over Dacco.

5. Dacco owns substantial property and conducts substantial business activities within this judicial district, in Putnam County, Tennessee. A substantial part of the events and omissions giving rise to this action occurred within Putnam County, Tennessee. Accordingly, venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) and (2), and § 1391(d).

**Facts**

6. Dacco is engaged, and at all times material to this action was engaged, in the business of selling remanufactured torque converters and other remanufactured parts for motor vehicle transmissions.

7. Prior to March 14, 2007, Dacco's business also included a Rebuilt Hard Parts Division, pursuant to which Dacco itself remanufactured internal transmission parts for sale to Dacco's customers.

8. On or about March 14, 2007, Dacco sold to Precision substantially all of the tangible assets of its Rebuilt Hard Parts Division, including equipment, inventory, tooling and supplies. The parties understood and agreed that, following such asset sale, Precision would remanufacture internal transmission parts as Dacco had done prior to the sale, and that Dacco would become Precision's principal customer, with Dacco buying the same transmission parts from Precision that Dacco itself previously remanufactured, for resale to Dacco's customers.

9. In connection with Dacco's sale of the assets of its Rebuilt Hard Parts Division to Precision, Dacco also entered into a contract entitled "Supply Agreement," a true copy of which is attached to this Complaint as Exhibit A (the "Supply Agreement").

10. Pursuant to the Supply Agreement, Dacco expressly agreed that, during the three-year term of the Supply Agreement, Dacco would purchase from Precision "a minimum of 90% of its requirements for those rebuilt hard parts and gears" described in the Supply Agreement. The materials Dacco agreed to purchase from Precision in the Supply Agreement are referred to in the agreement, and will hereinafter be referred to as the "Products."

11. Prior to the execution of the Supply Agreement, Dacco represented to Precision that its required purchases of Products would exceed $100,000 per month.

12. Pursuant to the Supply Agreement, Precision agreed that it would not sell Products directly to numerous then-existing resale customers of Dacco, who were specifically identified in the Supply Agreement, during the three-year term of the Supply Agreement.

13. Precision invested substantial capital and incurred substantial out-of-pocket expense in relocating the assets purchased from Dacco, in securing a suitable facility for the operation of its business, in staffing the business, and in otherwise commencing and conducting operations of its business utilizing the purchased assets.

14. During May, 2007, the first full month of operation of Precision's business, Dacco purchased more than $100,000 worth of Precision's Products.

15. On a date in 2007 that is not presently known to Precision, Dacco began purchasing more than 10% of its requirements for Products from other parties. Dacco's Products purchases from Precision during June 2007 fell by approximately 50% as compared to its purchases in May 2007, then rose somewhat in the next month. Dacco's Products purchases from Precision continued to fall in the succeeding months, to approximately $17,000

3

during February, 2008. Dacco did not purchase any Products from Precision after February, 2008.

16. Precision performed its obligations under the Supply Agreement. Precision was at all times ready and willing to supply Dacco a minimum of 90% of Dacco's requirements for the Products.

17. As a direct result of Dacco's failure to purchase at least 90% of its requirements for the Products, as required by the Supply Agreement, and Precision's inability to sell Products directly to Dacco's customers without breaching the Supply Agreement, the business of Precision failed. Precision was required to cease operations, lost its business premises, and lost what was left of its assets.

## First Claim for Relief

### (Breach of Contract)

18. Precision realleges and incorporates by reference the allegations of paragraphs 1-17 of this Complaint.

19. The Supply Agreement was a valid and binding contract between Dacco and Precision.

20. Dacco's failure to purchase a minimum of 90% of its requirements for the Products throughout the three-year term of the Supply Agreement constitutes a breach of the Supply Agreement.

21. By reason of Dacco's breach of the Supply Agreement, Precision suffered substantial monetary and property losses, and sustained considerable and foreseeable direct, consequential and incidental damages. The damages sustained by Precision include, but are not limited to, the capital expenditures, start-up expenses, operating expenses and other costs and expenses incurred by Precision to commence and operate its business of producing the

4

Products Dacco had agreed to purchase from Precision, and the lost revenues and profits Precision would have realized had Dacco performed its obligations under the Supply Agreement.

## Second Claim for Relief

### (Breach of Implied Covenant of Good Faith and Fair Dealing)

22.     Precision realleges and incorporates by reference the allegations of paragraphs 1-21 of this Complaint.

23.     The Supply Agreement with Precision imposed upon Dacco an implied duty to act in good faith and to deal fairly with Precision in all respects in the course of Dacco's performance of the Supply Agreement.

24.     Dacco entered into the Supply Agreement with Precision with actual knowledge that Precision would not have purchased substantially all of the tangible assets of Dacco's former Rebuit Hard Parts Division, had Dacco not agreed to enter into the Supply Agreement with Precision.

25.     Dacco also entered into the Supply Agreement with Precision with actual knowledge that Precision's success in the operation of the business of producing the Products, during the three-year period immediately following Precision's purchase of the tangible assets of Dacco's Rebuilt Hard Parts Division, would be dependent upon Dacco's performance of its contractual undertaking to purchase a minimum of 90% of Dacco's requirements for the Products to be produced by Precision. Dacco likewise knew that Precision reasonably and justifiably expected, at the time it entered into the Supply Agreement, that Dacco's requirements for Products to be produced by Precision for resale to Dacco's customers would approximate the quantity of Products produced by Dacco itself prior to execution of the Supply Agreement.

26. Dacco also entered into the Supply Agreement with actual knowledge that, because of Dacco's dominant market position as a seller of remanufactured internal parts for vehicle transmissions, Precision's contractual undertaking not to make direct sales of the Products directly to Dacco's customers during the three-year term of the Supply Agreement would effectively deprive Precision of an alternative market for the sale its Products, if Dacco failed to comply with its requirements contract with Precision.

27. By reason of the foregoing Dacco had actual knowledge, at the time it entered into the Supply Agreement and throughout the term of the Supply Agreement, that Dacco's failure to perform its contractual obligation to purchase from Precision a minimum of 90% of Dacco's requirements for the Products would necessarily cause a failure of Precision's business.

28. Dacco's unjustifiably and without explanation failed to purchase Products from Precision in quantities approximating the volume of Products produced by Dacco itself prior to execution of the Supply Agreement.

29. Dacco violated its implied duty of good faith and fair dealing owed to Precision by, among other acts and/or omissions, unjustifiably and without explanation failing to purchase Products from Precision in quantities approximating the volume of Products produced by Dacco itself prior to execution of the Supply Agreement, and unjustifiably and without explanation failing to purchase from Precision a minimum of 90% of Dacco's requirements for the Products, during the three-year term of the Supply Agreement.

WHEREFORE, Precision respectfully prays as follows:

A. That proper process be issued and served upon Dacco, requiring it to appear and answer this Complaint.

B. That Dacco be adjudged to have breached the express terms of the Supply Agreement between Precision and Dacco, as alleged herein.

C.  That Dacco be adjudged to have breached the implied covenant of good faith and fair dealing made by Dacco in connection with the Supply Agreement, as alleged herein.

D.  That judgment be entered herein awarding Precision compensatory damages from and against Dacco, in an amount in excess of $75,000 and sufficient to make Precision whole for all economic and other injury and damages that Precision is shown to have sustained as a result of Dacco's breaches of the express terms of the Supply Agreement, and/or as a result of Dacco's breaches of the implied covenant of good faith and fair dealing made by Dacco in connection with its execution of the Supply Agreement.

E.  That Precision additionally be awarded, as part of its judgment against Dacco, all costs and expenses incurred by Precision in this action that may properly be assessed against and recovered by Precision from Dacco.

F.  That Precision be awarded such other and further relief which it shall establish its entitlement to receive.

**PLAINTIFF DEMANDS A TRIAL BY JURY AS TO ALL ISSUES SO TRIABLE.**

Dated: March 14, 2013

Respectfully submitted,

DICKINSON WRIGHT PLLC

By: _____
M. Reid Estes, Jr.  BPR #9043
restes@dickinsonwright.com
Darrell L. West  BPR #5962
dwest@dickinsonwright.com
424 Church Street, Suite 1401
Nashville, Tennessee  37219
Phone: (615) 244-6538
Fax: (615) 256-8386
Attorneys for Plaintiff